## Lena Consiglio *v.* Administrator, Unemployment Compensation Act

Brown, C. J., Jennings, Baldwin, Inglis and Troland, Js.

Argued April 4—decided May 22, 1951

*James F. Rosen,* with whom was *James R. Greenfield,* for the appellant (plaintiff).

*Harry Silverstone,* assistant attorney general, for the appellee (defendant).

INGLIS, J. There are two questions to be decided in this case. They are, first, whether an employee is subject to the disqualification for unemployment benefits prescribed in General Statutes, § 7508 (2), if he leaves work at which he is being employed only part time to accept a better paying position, and, second, whether, if he leaves during a vacation period, his leaving dates from the beginning of that period or from the date of his actual leaving.

For a long time prior to July, 1949, the plaintiff had been in the employ of the Echlin Manufacturing Company. Commencing in January, 1949, the company, because of business conditions beyond its control, had great difficulty in providing work for its employees. In April it was compelled to go on a three-day week, and from then on its employees worked only on Monday, Tuesday and Wednesday. On this schedule the plaintiff's weekly pay was $20.88. Her weekly benefit

rate under the Unemployment Compensation Act was $20. In May the plaintiff applied for and received benefits in the amount of $3 a week for partial unemployment, pursuant to General Statutes, § 7502. This condition continued to and including Wednesday, June 29. During the following two weeks, that is, the weeks ending July 9 and 16, the company closed for vacation. The plaintiff was entitled to and received a full week's pay of $38.80 for the first week of the vacation but was not entitled to any pay for the second week.

During the second week of the vacation period the plaintiff obtained work at the Sperry and Barnes Company at a rate of pay which would normally yield her $42 per week. She thereupon left her job with the Echlin company and started work for Sperry and Barnes. Her employment, however, lasted for only two weeks. On July 30 she was laid off for lack of work. The plaintiff at the time was married and had no children. Her husband was employed at a wage which would have adequately supported the family. She would not have left her employment at the Echlin company had she not obtained the job at Sperry and Barnes.

The plaintiff claims that her employment with the Echlin company terminated on June 29, the last day on which she worked, and that she is entitled to unemployment benefits for the week ending July 16, the second week of her vacation, and for the period following her discharge from the Sperry and Barnes Company on July 30, all on the basis of the benefit rate accrued by reason of her employment by the Echlin company. The unemployment commissioner, concurring with the field supervisor, concluded that she left her employment at the Echlin company without sufficient cause as of July 9 and that she was disqualified under the statute for benefits during the four-week period from July 9 to

August 6, 1949. The Superior Court sustained him in these conclusions.

General Statutes, § 7508, so far as pertinent to the present inquiry, reads as follows: "An individual shall be ineligible for benefits . . . (2) during the week in which, in the opinion of the administrator, he has (a) left work without sufficient cause connected with his employment except when such leaving is beyond his control solely by reason of governmental regulation or statute . . . and for the next four following weeks, none of which shall count towards the waiting period provided for in subsection (4) of section 7507 . . . ." This disqualification is in accord with the general theory of unemployment compensation laws, which is that compensation is to be provided for unemployment which is involuntary on the part of the employee. *Almada* v. *Administrator,* 137 Conn. 380, 386, 77 A. 2d 765; *Baldassaris* v. *Egan,* 135 Conn. 695, 698, 68 A. 2d 120. An employee forfeits his benefits for a four-week period if he leaves his work without sufficient cause connected with his employment, because such leaving is voluntary on his part and it is to be presumed that his unemployment for the four-week period thereafter is the result of his leaving. Kempfer, "Disqualification for Voluntary Leaving & Misconduct," 55 Yale L. J. 147, 149. On the other hand, if an employee leaves his work for what, in the opinion of the administrator, is a sufficient cause connected with his employment, his resultant unemployment is not voluntary and, accordingly, the statute relieves the employee from the disqualification. The sole test of whether an employee escapes the temporary disqualification resulting from his quitting his job, therefore, is whether, in the opinion of the administrator, the employee left for a sufficient cause connected with his employment.

It is to be noted that, in the present case, the unem-

ployment commissioner made no finding that the cause of the plaintiff's leaving work was a sufficient cause connected with her employment. On the contrary, he found that she would not have left had she not obtained the better job with Sperry and Barnes. Still less does it appear that the cause was such a one "in the opinion of the administrator," as the statute provides. The plaintiff, therefore, must and does rest upon the claim that the cause of her leaving work was a sufficient cause connected with her employment as a matter of law and that the field supervisor and the commissioner abused their discretion in concluding otherwise.

Her contention is, first, that a cause for leaving is sufficient and connected with her employment if that employment is not suitable, and, second, that under the definition of suitable as contained in the act her employment with the Echlin company was not suitable. The first part of her claim is valid. The act does not contemplate that an employee must remain upon a job which is unsuitable to the extent, for instance, that it endangers his health. If he leaves a job which is really unsuitable, his leaving is not voluntary. If the cause of his leaving is the unsuitability of the job, that cause is one which the administrator might reasonably find is sufficient and one which is connected with the employment.

The second phase of the plaintiff's contention, however, is not so well founded. It is true that, if unsuitability of the work is a sufficient cause for leaving under the terms of the particular portion of the statute with which we are now concerned, we may look to other provisions of the act for a definition of unsuitability. Specifically, we may look to that portion of § 7508 which relates to disqualification for benefits on the ground of unavailability for work. *Fannon* v.

*Federal Cartridge Corporation,* 219 Minn. 306, 312, 18 N. W. 2d 249; Kempfer, "Disqualification for Voluntary Leaving & Misconduct," 55 Yale L. J. 147, 155. That portion of the section (General Statutes § 7508 [1]), however, does not assist the plaintiff. After providing for the temporary disqualification of an unemployed individual who refuses to apply for "suitable" work when directed so to do, it reads: ". . . provided work . . . shall not be deemed suitable unless the administrator finds that it may reasonably be expected to yield remuneration at a rate greater than the individual's benefit rate for total unemployment . . . ." Under this definition the plaintiff's work at the Echlin company at the time she left was not unsuitable employment. Aside from the fact that there is no finding by the commissioner as to the remuneration which the plaintiff's work there might have been expected to yield in the future, at that time it was yielding $20.88 per week, and that was in excess of the plaintiff's weekly benefit rate of $20. On this basis, therefore, there would have been no justification for an opinion that a sufficient cause for leaving the employment existed.

The plaintiff calls attention to General Statutes, § 7502. This is the section under which she was receiving partial unemployment benefits. It provides that an individual who is partially unemployed in any week "shall be paid with respect to such week an amount equal to the excess of his benefit rate for total unemployment over the total remuneration of any nature payable to him for services of any kind during such week, disregarding the first three dollars of such total remuneration and any fraction of a dollar over and above the number of whole dollars therein . . . ." Under these provisions as they applied to the situation in which the plaintiff found herself in May and June, 1949, her partial unemployment compensation was

arrived at by disregarding the sum of $3 as well as the odd eighty-eight cents over the even dollars of her weekly pay of $20.88. An amount of $17 was left. The difference between $17 and $20, her weekly benefit rate, was her compensation for partial unemployment. Her argument is that the effect of § 7502 was to reduce her pay to $17 per week. This would mean that her pay was less than her weekly benefit rate, and it would follow that, pursuant to § 7508(1), the employment was unsuitable. This argument is more ingenious than sound. Section 7502 did not operate to reduce the plaintiff's pay by $3.88. It provided simply that $3.88 of her pay should be disregarded in computing her compensation for partial unemployment. The remuneration which she actually received from her employer remained $20.88 per week, and it is to actual remuneration that § 7508(1) refers when it provides that unemployment is unsuitable unless the remuneration therefor is in excess of the individual's benefit rate for total unemployment. It would be illogical to apply the terms of a statute like § 7502, which pertains only to a condition of continuing employment, in deciding whether an employee was justified in terminating her work completely. Section 7502 has no bearing on the question of suitability of work.

There is nothing in the unemployment commissioner's finding which leads to the conclusion that the plaintiff's work was unsuitable because of the amount of remuneration or for any other reason. It follows that the plaintiff left her work without sufficient cause connected with her employment and that the trial court was right in sustaining the commissioner's decision on that phase of the case.

We are not unmindful that it might better conserve the unemployment compensation fund if an employee could leave one job to go to a better one, as the plain-

tiff did, without risking disqualification for benefits in the event that the second position did not last. We are, however, faced with the statute as it is. The statute compels disqualification in every case in which an employee has left his work, with the one exception where there is sufficient cause connected with the employment which he leaves, in the opinion of the administrator. That the employee can obtain better terms of employment elsewhere is a factor not connected with his present employment but with the other job. If a further exception is to be added to the disqualification resulting from the leaving of work, that is within the province of the legislature, not of the courts.

In passing, it might be noted that, although it did not control his conclusion in the case, the commissioner took into consideration the fact that there was no great economic pressure upon the plaintiff to engage in a gainful occupation. Such a consideration had no relevancy to the precise question before him. It might have had a bearing upon the question of the plaintiff's availability for work if that had been in issue. It had no relation to the question whether she had sufficient cause for leaving work, because it was not a "cause connected with [her] employment."

The plaintiff's contention that her employment at the Echlin company terminated on June 29 so that her four-week disqualification period commenced on that date, rather than on July 9 as decided by the commissioner, is without merit. During the week ending July 9 she was on vacation with pay. Her employment by the Echlin company was still in force. *Kelly* v. *Administrator*, 136 Conn. 482, 486, 72 A. 2d 54. She had not left her work during that week. She did not leave her work until she accepted the position with Sperry and Barnes, and that was during the week ending July 16.

There is no error.
In this opinion the other judges concurred.