WILLIAM FELLIN *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.
(12454)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued April 9—decision released June 11, 1985

*Edmund C. Tiryakian,* with whom, on the brief, was *Kirk D. Tavtigian, Jr.,* and *Joel A. Boone,* for the appellant (plaintiff).

*Thadd A. Gnocchi,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellee (named defendant).

PETERS, C. J. This case concerns the eligibility for unemployment compensation of a worker who, having been discharged from his primary employment, voluntarily leaves part-time secondary employment. The plaintiff employee, William Fellin, filed an administrative appeal in the Superior Court from the decision of the employment security board of appeals upholding the determination of the defendant administrator of the Unemployment Compensation Act that he was ineligible for benefits. The trial court dismissed the plaintiff's appeal. When the plaintiff then sought further review in the Appellate Court, this court transferred the case here pursuant to Practice Book § 3004A.[1]

---

[1] Practice Book § 3004A provides:

"The supreme court may transfer to itself a cause in the appellate court. Except for any matter brought pursuant to its original jurisdiction under the constitution, the supreme court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the appellate court. The court to which a cause is transferred has jurisdiction.

"There shall be no fee on such transfer. The chief clerk of the supreme court shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred and the chief clerk shall require the parties to take such steps as may be necessary to make the appeal conform to the rules of the court to which it has been transferred."

The underlying facts are undisputed. The plaintiff was a full-time employee of General Motors, his primary employer, for almost nine years until April 8, 1982. During the last eight months of his primary employment, he also worked part-time for General Corporation of America, his secondary employer. Several days after he was laid off from his primary job he voluntarily left his secondary job "to avoid complications with [unemployment] benefit or [sub-benefit] programs and to allow [himself] more available hours for any other full-time employment." Although the plaintiff had previously been able to transfer his part-time work hours to accommodate his other commitments, he did not seek to change his part-time work schedule but instead terminated his secondary employment on April 11, 1982.

The plaintiff received unemployment benefits of $176 a week until the defendant administrator, after a hearing, determined that the plaintiff was not entitled to benefits from April 11, 1982, because "he voluntarily left suitable work without requisite cause." See General Statutes § 31-236 (2) (A).[2] As a result of this administrative determination, the plaintiff was declared to be ineligible for future benefits until he returned to work and earned ten times his benefit rate; see id.;[3] and, in addition, was notified to return $3344 representing weekly benefits mistakenly paid to him from April 11 to August 21, 1982. The administrative record indicates that the investigation into the plaintiff's eligibility was initiated by the claim of the plaintiff's

---

[2] General Statutes § 31-326 provides in relevant part: "An individual shall be ineligible for benefits . . . (2) (A) if, in the opinion of the administrator, he has left suitable work voluntarily and without sufficient cause connected with his work, provided no individual shall be ineligible for benefits if he leaves suitable work for cause, including leaving as a result of changes in conditions created by his employer, or until such individual has earned at least ten times his benefit rate."

[3] See the last clause of footnote 2, supra.

secondary employer that the plaintiff "left our company of his own choosing." Throughout the administrative proceedings, the sole designated employer was the plaintiff's secondary employer, General Corporation of America.

The plaintiff's appeal to the employment security appeals division challenged the factual premises upon which the defendant had concluded that the plaintiff was ineligible for unemployment benefits. Before the appeals referee, he argued that he had left his secondary part-time employment for compelling personal cause because he needed time to apply for and to make himself available for full-time work. This claim was rejected and the plaintiff appealed to the board of review of the employment security appeals division, arguing that he had been unaware that he would have been able to continue working part-time without forfeiting partial unemployment benefits and protesting the unfairness of having to repay benefits previously received in good faith. These arguments were also rejected. Throughout his unsuccessful administrative appeals, the plaintiff acted on his own behalf without the assistance of counsel.

Having exhausted his ordinary administrative remedies, the plaintiff sought the advice of counsel, who filed a motion to reopen, addressed to the board of review, and an appeal addressed to the Superior Court. Notably, in both of these challenges, the plaintiff principally claimed error in the factual findings that underlay the determination of his ineligibility for unemployment benefits. The board of review denied his motion to reopen.[4] The trial court determined that "[t]he action

---

[4] In his motion to reopen the determination of the board of review, the plaintiff sought permission to introduce "new evidence" to remedy the "grave injustice" of the administrative decision. The board of review denied this motion because it could not "formulate a considered opinion as to the materiality of either such 'injustice' or the 'new evidence' " when the motion failed to describe or to specify the grounds upon which it was premised.

of the administrator in denying the claim of the plaintiff for unemployment compensation was not unreasonable, arbitrary or illegal." The court then rejected the plaintiff's claim that his ineligibility for benefits violated either public policy or the plaintiff's constitutional rights to substantive due process or equal protection of the laws.

The plaintiff's appeal to this court puts the plaintiff's alleged eligibility for unemployment benefits into a new context. Although in one of his claims of error the plaintiff continues to maintain that the administrative decision was unreasonable, arbitrary and an abuse of discretion, the plaintiff's principal contention now is that the eligibility statute, properly construed, permits a distinction between eligibility for benefits arising out of part-time secondary employment and eligibility for benefits arising out of full-time primary employment. Should this court be disinclined to find such a distinction in the language of § 31-236 (2) (A), the plaintiff urges us to hold the statute to be so irrational as to violate the equal protection clauses of the United States and the Connecticut constitutions.[5]

We need not linger at length over the plaintiff's claim that the referee and the board of review erred in coming to the factual determination that he had left suitable work voluntarily and without sufficient cause connected with his work. As the trial court correctly noted, administrative appeals brought under General Statutes § 31-249b, insofar as they relate to factual

---

[5] Because of our disposition of the plaintiff's statutory argument, we do not reach his constitutional claims.

The plaintiff also alleges error in the denial by the board of review of his motion to reopen. As the defendant properly observes, this issue was not pursued in the trial court. On the contrary, the trial court expressly noted in its memorandum of decision that the plaintiff had admitted that "he [had] been afforded procedural due process in the [administrative] determination of his claim." On this state of the record, we decline to consider this matter further. See Practice Book § 3063.

findings, are limited to a review of the record certified and filed by the board of review. The scope of such judicial review is in turn limited to the question whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. *Burnham* v. *Administrator,* 184 Conn. 317, 321–22, 439 A.2d 1008 (1981); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 5, 434 A.2d 293 (1980). The trial court's memorandum of decision persuasively demonstrates that the plaintiff cannot successfully challenge the factual premises of the administrator's action. In apparent recognition of the futility of further pursuit of this claim of error, the plaintiff's counsel at oral argument in this court expressly disclaimed any further disagreement with the factual findings underlying the plaintiff's declared ineligibility for unemployment benefits.[6]

The plaintiff's principal claim on this appeal is that the administrative proceedings were flawed not by factual error but by misconstruction of the applicable statute. Due respect for the remedial purposes of the Unemployment Compensation Act requires, he maintains, a construction of General Statutes § 31-236 (2) (A) that limits ineligibility for benefits to the *particular* work that the employee "left . . . voluntarily and without sufficient cause connected with his work." This argument has two subparts, only the first of which was presented in the proceedings below. First, the plaintiff contends that, since he was not claiming benefits with regard to his part-time, secondary employment, he should be deemed fully eligible for unemployment benefits arising out of the involuntary termination of his full-time, primary employment. In the alternative,

---

[6] In light of this concession, we need not discuss further the plaintiff's contention that the part-time employment that he left voluntarily was not "suitable work." Because that specific issue was not properly raised before the board of review, it would in any case have been inappropriate for us to consider it on its merits. *Finkenstein* v. *Administrator,* 192 Conn. 104, 112–14, 470 A.2d 1196 (1984).

the plaintiff contends that he is at least entitled to retain those partial unemployment benefits, arising out of his discharge from his primary full-time work, which he could have collected had he retained his secondary, part-time job. Under either theory, he argues, the statute must be interpreted so that eligibility for unemployment benefits distinguishes between the work that was left without cause and the work from which the employee was discharged without fault.

This claim of statutory construction, although not fully articulated below, is properly here. Judicial review of administrative proceedings allows for "judicial scrutiny of claims such as constitutional error; see *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979); jurisdictional error; *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 693, 137 A.2d 542 (1957); or error in the construction of the administrative agency's authorizing statute. See 2 Cooper, State Administrative Law (1965) 595–602. In addition, the leniency traditionally afforded to inexperienced pro se parties may justify belated consideration of claims not fully explored in earlier proceedings." *Burnham* v. *Administrator,* supra, 322–23.

This court has had little opportunity to examine the implications of part-time employment for eligibility for unemployment compensation. The case most closely relevant is *Consiglio* v. *Administrator,* 137 Conn. 693, 81 A.2d 351 (1951). There a worker voluntarily left part-time work, at a time when she was receiving partial unemployment benefits, in order to obtain a better full-time job with another employer. After two weeks on her new job, she was laid off for lack of work. The administrator found that the worker had left her part-time employment without sufficient cause and concluded that she was totally disqualified for benefits for the statutory disqualification period. Although we empathized with the worker's legitimate desire to

obtain a better job, we nevertheless held that "[t]he statute compels disqualification in every case in which an employee has left his work, with the one exception where there is sufficient cause connected with the employment which he leaves, in the opinion of the administrator." Id., 700. *Consiglio* is not on all fours, because the partial unemployment benefits that the worker there forfeited were attributable to the work that she voluntarily left, that work having previously been full-time. Furthermore, this particular holding has been statutorily overruled by an express provision added in 1967.[7] Nonetheless, *Consiglio* is instructive on two points: our inability to rewrite the Unemployment Compensation Act to reflect our own view of public policy, and our deference to the determinations of those charged with the administration of the unemployment compensation system.

The more expansive version of the plaintiff's statutory claim is that eligibility for unemployment compensation is causally related to the particular employment that is chargeable for benefits. This claim, which is the only issue of statutory construction that was pursued in the trial court, urges us to read critically the introductory language of § 31-236 which states that: "An individual shall be ineligible for benefits . . . . " Because the statute does not use the words "any and all benefits," the plaintiff suggests that the statute's subsequent disqualification of someone who "has left suitable work voluntarily and without sufficient cause connected with his work . . ." can logically be construed to limit disqualification to unemployment benefits attributable to the work voluntarily left. Applying that principle to the facts of this case, the plaintiff urges us to hold that

[7] Public Acts 1967, No. 790, § 14, added as a fourth proviso to the general disqualification rule of General Statutes § 31-236 that "a person who leaves part-time work to accept full-time work, shall not be ineligible on account of such leaving." General Statutes § 31-236 (2) (B) (iv).

he had forfeited unemployment benefits with regard to his part-time secondary work but not with regard to his full-time primary work. We disagree. The plaintiff's argument is inconsistent with our repeated holdings that "the questions of eligibility and chargeability are, under our unemployment compensation laws, separate and distinct." *Burnham* v. *Administrator,* supra, 324; see *Oppenheimer* v. *Administrator,* 177 Conn. 593, 594, 419 A.2d 337 (1979). Furthermore, since the plaintiff's argument raises at best a possible ambiguity in the statute, we are well advised to defer to a contrary administrative construction that is facially plausible.[8]

The more limited version of the plaintiff's statutory claim, and the one he espoused at oral argument, is that he should be entitled to retain the partial benefits that he could have collected had he continued his part-time employment. Under § 31-229,[9] the plaintiff's part-time earnings would have reduced but would not have eliminated his unemployment benefits. Since the plaintiff had no duty to his former full-time employer to take up part-time employment, he maintains that he should not be penalized any further than to put him, and his former full-time employer, in the same position as if he had not voluntarily left his part-time work. In other words, his voluntary departure from his secondary employment should be irrelevant to the benefits attributable solely to his primary employment.

---

[8] We note that the administrator's interpretation of the act is also consistent with the provision of General Statutes § 31-236 (2) (B) (iv) that "a person who leaves part-time work to accept full-time work, shall not be ineligible [for benefits] . . . ." That provision demonstrates that the legislature was not unaware of possible conflicts between part-time and full-time employment.

[9] General Statutes § 31-229 provides: "BENEFIT FOR PARTIAL UNEMPLOYMENT. An eligible individual who is partially unemployed throughout a week, which shall be, at the discretion of the administrator, either a calendar week or a payroll week of seven consecutive days as determined by the administrator, shall be paid with respect to such week an amount equal to his benefit rate for total unemployment reduced by an amount equal to two-thirds,

In support of his claim, the plaintiff relies on the holdings of a number of courts in other jurisdictions that have afforded similar benefits to part-time workers. See, e.g., *Tomlin* v. *Unemployment Ins. Appeals Board,* 82 Cal. App. 3d 642, 147 Cal. Rptr. 403 (1978); *Neese* v. *Sizzler Family Steak House,* 404 So. 2d 371 (Fla. App. 1981); *Emerson* v. *Director of the Division of Employment Security,* 393 Mass. 351, 471 N.E.2d 97 (1984); *Sticka* v. *Holliday Village South,* 348 N.W.2d 761 (Minn. 1984); *Gilbert* v. *Hanlon,* 214 Neb. 676, 335 N.W.2d 548 (1983); but see *Grandy* v. *Phillips,* 64 App. Div. 2d 796, 408 N.Y.S.2d 155 (1978). These cases emphasize that it furthers the policy of unemployment compensation acts to provide incentives for employees to take part-time work. They suggest that if such employees were to risk the loss of all unemployment benefits upon their subsequent termination of their part-time jobs, they would be less likely to enter into such employment. The decisions also point out that a former full-time employer has no justifiable complaint about his liability for benefits in such cases since, absent the claimant's optional part-time work, the employer could have been charged for even larger benefits.

---

rounded to the next higher whole dollar, of the total remuneration, rounded to the nearest whole dollar, of any nature payable to him for services of any kind during such week, except service performed in the employ of any town, city or other political subdivision, which service is performed in lieu of payment of any delinquent tax payments to such town, city or other political subdivision. An individual shall be deemed to be partially unemployed in any week of less than full-time work if the total remuneration of any nature payable to him for services of any kind during such week, except service performed in the employ of any town, city or other political subdivision, which service is performed in lieu of payment of any delinquent tax payments to such town, city or other political subdivision, amounts to less than one and one-half times his benefit rate for total unemployment rounded to the next highest dollar. For purposes of this section, remuneration shall also include any holiday pay payable with respect to any such week, whether or not any service was performed during such week or was in any other way required for receipt of such holiday pay."

The plaintiff's argument might well be persuasive if, "in the opinion of the administrator"; General Statutes § 31-236 (2); it is determined to be a reasonable construction of the governing statutes. The record is, however, clear that no such question was ever raised during the proceedings before the referee or the board of review. It is equally clear that the full-time primary employer has never had the opportunity to be heard on this issue. The only employer who participated in the administrative hearings was the part-time secondary employer, who successfully demonstrated that the plaintiff left that employment voluntarily and without cause. Ordinarily, we would hold that the failure to lay a timely administrative foundation for our consideration of this question should bar its belated consideration in this court, especially when the matter was only tangentially addressed in the trial court. Nonetheless, because we are confronted with a novel issue that raises important policy considerations, and because the plaintiff was pro se throughout almost all of the administrative proceedings, we believe that the remedial purposes of the Unemployment Compensation Act counsel a remand to the board of review in this case for consideration of the matter as finally framed before this court.[10]

---

[10] The impact of a voluntary quit without sufficient cause from a part-time job on eligibility for benefits of an employee who has also been laid off from primary employment has been the subject of three recent Superior Court decisions: *Brown* v. *Administrator,* Superior Court, Judicial District of Hartford-New Britain at Hartford, No. 281428, December 7, 1984, appeal pending, No. 12654 (Supreme Court); *Oslund* v. *Administrator,* Superior Court, Judicial District of Hartford-New Britain at Hartford, No. 280791, June 29, 1983, reversed for lack of jurisdiction, 3 Conn. App. 258, 487 A.2d 211 (1985); *Sullivan* v. *Administrator,* Superior Court, Judicial District of New London, No. 064261, May 24, 1982. However, the possibility of partial eligibility was not addressed in any of these cases. In *Oslund,* total eligibility was found; in *Brown* and *Sullivan,* total ineligibility was found.

There is error, the judgment of the trial court is set aside and the matter is remanded with direction to remand the case to the board of review for further proceedings.

In this opinion the other judges concurred.